REGAN, Judge.
Plaintiff, Eddie Lee Robertson, instituted this suit against the defendants, L. M. McLeod, Raymond Ralph, and Charles Patrick O’Day, as joint adventurers, endeavoring to recover the sum of $165, representing wages earned for work performed aboard the derrick barge Hercules.
Defendant Raymond Ralph answered and denied that he was a joint adventurer and also denied liability for these wages and then filed a third party complaint against the defendant L. M. McLeod requesting that in the event he be held liable for the services rendered by plaintiff, he be given judgment against McLeod for the amount of the award.
Defendant O’Day answered and denied that he was a joint adventurer with the defendants McL.eod and Ralph, asserting that McLeod chartered the Hercules from Ralph and hired the personnel to operate it and that he had been employed “by McLeod” as a “diver” at the rate of $100 per day.
Defendant McLeod pleaded the exceptions of vagueness and no cause or right of action to plaintiff’s petition as well as to the third party complaint, which we think the trial. judge properly overruled, and then answered and denied that he was liable to the plaintiff, asserting that plaintiff was in the employ of O’Day, who was engaged in the salvage operation for which the Hercules had been chartered. In answering the third party complaint, defendant McLeod insisted that he had entered into a verbal bare boat charter with Raymond Ralph for the benefit of O’Day merely as an accommodation and without any remuneration..
From a judgment in favor of plaintiff and against the defendant, McLeod, in the sum of $165 and dismissing plaintiff’s suit against the defendants Raymond Ralph and Charles Patrick O’Day, McLeod has prosecuted this appeal.
This case was consolidated with a similar suit for wages in order to facilitate and ex *476 pedite the trial thereof. -The suit referred to is entitled Gillespie v. McLeod, La.App., 106 So.2d 477.
The record reveals that on June 16, 1956, an oil barge owned by Jahncke Service Inc. sank in the Mississippi River near Chal-mette, Louisiana. Many unsuccessful efforts were made to locate it. Finally L. M. McLeod, a ship agent and broker, called Joseph H. Moss, Dredging Department manager for Jahncke and informed him he thought that he could locate the barge and wanted to know what Jahncke “would pay to put a line on it,” and the sum of $1,000 was ultimately agreed upon.
Captain Trudell, a Mississippi River pilot, and McLeod have been friends or business associates for many years, and Trudell generally uses the facilities of McLeod’s office for the conduct of any business which he might be engaged in locally. We simply mention this for the sake of coherence of the narrative since the record reflects a nebulous effort to disassociate these men as principal actors herein.
On or about September 9, 1956, Trudell located the sunken barge. However Moss did not pay the $1,000 for the discovery until the identity of the barge was actually established by a deep-sea diver.
Defendant O’Day was that deep-sea diver. He testified that he was merely an employee of McLeod at the rate of $100 per eight hour day. On the afternoon of September 10, 1956, O’Day dove from a small barge furnished by Jahncke at the location of the sunken barge and confirmed Captain Trudell’s discovery. Thereafter O’Day and Trudell called upon Moss so as O’Day could identify the barge to Moss’s complete satisfaction. Later Jahncke Service, Inc. was billed as follows: “To Jahncke Service, Inc. 814 Howard Avenue, New Orleans, Louisiana. September 10, 1956, to Joseph P. Trudell, c/o L. M. McLeod, 1326 National Bank of Commerce Building, to provide service as agreed between Joseph H. Moss and L. M. McLeod in serving and locating steel oil barge 878, opposite Kaiser Aluminum Plant, Mississippi River, in approximately 70 feet of water, flat price $1000, * * This bill for $1,000 was paid by Jahncke to Trudell, who asserted on the trial hereof, “It was all mine. I paid income tax on it,” and that “businesswise” he and McLeod were “just friends.”
On the night of September 10, 1956, Tru-dell called Moss in Mobile, Alabama, where he in the meantime had gone, and their conversation now related to a price for the raising of the sunken barge. As a final result of this conversation the sum of $4,000l was agreed upon between Moss, Jahncke’s employee, McLeod and Trudell as the amount to be paid for raising the barge. McLeod realized the necessity of securing a derrick barge which would be used to place slings around the sunken barge preparatory to raising it and therefore began the search for one.
Raymond Ralph, who does business under, the trade name of United River Service, was the owner of a derrick barge bearing the name Hercules. On or about September 12, 1956, McLeod contacted Ralph for the purpose of chartering the derrick; as a result of this conversation there was a verbal bare boat charter entered into, the consideration therefor being $50 per day. Me-. Leod then informed Ralph that he was in-need of an operator and a fireman who-would be used on the derrick in the course of raising the barge. Ralph testified that he then contacted the plaintiff herein and-Earl J. Gillespie, both of whom had worked off and on for him and informed them of the prospect of working for McLeod. They agreed to accept this employment on the Hercules.
Plaintiff Robertson worked on the Hercules, which was captained by Trudell from September 12, 1956, through September 22, 1956; his earnings for this period of time were certified by defendant O’Day upon Trudell’s instructions as 'correct on a time slip introduced into evidence by plaintiff. The record amply reflects that the amount of wages earned by the- plaintiff has been *477 proven with the certainty which the law requires. The time slip was addressed to United River Service, and -the explanation as to why it bore the name of this addressee was that McLeod was to send the money for wages to Ralph, who in turn would pay the employees on McLeod’s behalf since accounting problems relating to workmen’s compensation, social security and income tax deductions were involved. Both Robinson and Gillespie confirmed the reasonableness of the foregoing explanation during the course of their testimony.
It appears that the endeavor to raise the sunken barge was disrupted by the hurricane “Flossie.” Consequently, we were informed during oral argument before this court that no one has been paid for any services rendered in connection with the venture; hence these suits for wages.
Despite the foregoing facts McLeod insists that he was not the entrepreneur in this venture of raising the sunken barge for Jahncke, that he merely chartered the derrick Hercules from Ralph for the benefit and convenience of O’Day as principal, and he anticipated no monetary gain or profit from this venture.
The trial judge, obviously, was not impressed by this contention, and concluded from the evidence adduced on the trial hereof that McLeod was the entrepreneur and that he had employed the plaintiff herein and was therefore responsible for his wages in the amount of $165.00.
The question which this appeal has posed for our consideration is whether that factual finding by the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a dissection of the testimony or by endeavoring to reconcile the respective litigants’ versions of this matter. The trial judge obviously accepted plaintiff’s, Joseph Moss’s, Ralph’s, and O’Day’s versions thereof, as opposed principally to Trudell’s and McLeod’s, whom the trial judge found to be, at least, a “reluctant witness,” and our analysis of the record fails to reflect reversible error; on the contrary, it convinces us that the evidence preponderates in plaintiff’s favor, and the judgment is therefore correct.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., absent takes no part.